SO ORDERED.

SIGNED this 8th day of April, 2022.



Mitchell L. Herren
United States Bankruptcy Judge

_____

DESIGNATED FOR ONLINE PUBLICATION ONLY

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE:<br><br>JOYCE DARLENE LARSON and<br>GARY CLIFFORD LARSON.<br><br>    Debtors. | Case No. 21-10198<br>Chapter 7 |
| KANSAS DEPARTMENT OF LABOR,<br><br>    Plaintiff,<br>vs.<br><br>GARY CLIFFORD LARSON,<br><br>    Defendant. | Adv. No. 21-5014 |

**ORDER DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
<u>AND ORDER GRANTING LEAVE TO AMEND COMPLAINT</u>**

1

The Kansas Department of Labor (KDOL) seeks entry of default judgment against defendant, debtor Gary Larson, determining that his debt for overpayment of unemployment insurance benefits he received in 2009 and 2010 is excepted from discharge under 11 U.S.C. § 523(a)(2)(A).[1]

The Court conducted an evidentiary hearing to satisfy itself that there was sufficient evidence to support the KDOL's administrative findings and the complaint's allegations that Larson "willfully and knowingly failed to disclose a material fact, or made false statements, representations or pretenses to obtain a [unemployment insurance] benefit not due" and that such actions "warrant a finding of nondischargeability pursuant to 11 U.S.C. § 523(a)(2)(A)."[2] KDOL made it clear at the hearing that it was *not* contesting dischargeability of Larson's debt under § 523(a)(2)(B), which would require proof of Larson's use of a materially false "statement in writing."

However, as the hearing showed, Larson misrepresented in his weekly unemployment claims that he did not work during the weeks claimed and that he had no hours or earnings. False representations that are "statements respecting the debtor's financial condition" are expressly excluded from § 523(a)(2)(A), but instead are covered by § 523(a)(2)(B). Larson's alleged misrepresentations are "statements respecting [his] financial condition" under the Supreme Court's interpretation of that statutory language.[3] As such, the misrepresentations are not actionable under

---

[1] The Court has subject matter jurisdiction over a core proceeding to determine the dischargeability of a debt under 28 U.S.C. § 157(b)(2)(I) and § 157(b)(1) and § 1334(b).
[2] Adv. Doc. 1, ¶¶ 20-21.
[3] *See Lamar, Archer & Cofrin, LLP v. Appling,* ___ U.S. ___, 138 S. Ct. 1752 (2018).

**2**

§ 523(a)(2)(A) and default judgment pursuant to the allegations plead in the complaint must be denied.

Procedural History

Larson filed a Chapter 7 bankruptcy and the KDOL shortly thereafter commenced this nondischargeability proceeding. Larson was duly served with the summons and complaint but failed to answer or otherwise respond. A Clerk's Entry of Default was entered pursuant to Fed. R. Civ. P. 55(a), as made applicable to adversary proceedings by Fed. R. Bankr. P. 7055.[4] The KDOL then moved for entry of a Default Judgment against Larson.

The Court set the motion for an evidentiary hearing via Zoom pursuant to Fed. R. Civ. P. 55(b)(2) to determine whether the KDOL's complaint satisfied the requisite elements for nondischargeability under § 523(a)(2)(A). Notice of the evidentiary hearing was sent to Larson via the Bankruptcy Noticing Center.[5] Larson failed to appear at the evidentiary hearing when the Court called the matter and the KDOL presented its case-in-chief and rested.[6] Having heard the evidence and reviewed the KDOL's Exhibits 1-8, the Court makes the following findings of fact and conclusions of law.[7]

---

[4] Adv. Doc. 8.
[5] Adv. Doc. 11. The Bankruptcy Clerk's office also sent a trial reminder letter to Larson two weeks prior to trial. Adv. Doc. 13
[6] Defendant Larson joined the evidentiary hearing in progress via telephone (without video) approximately one hour into the hearing and near the end of the KDOL's case-in-chief. He declined to cross-examine the KDOL's last witness, Kaneetha Crisler, declined to introduce any evidence, but made a very brief closing remark.
[7] Though the Court preliminarily ruled from the bench in favor of the KDOL that it had provided sufficient proof of false pretenses and a false representation,, the Court advised

3

Findings of Fact

Larson received nine weeks of unemployment insurance benefits for the weeks ending Saturday,[8]

January 24, 2009
December 26, 2009
January 16, 2010
January 30, 2010
February 13, 2010
February 20, 2010
March 6, 2010
March 20, 2010
March 27, 2010

For each week he received unemployment benefits, debtor submitted a weekly claim in which he represented that he did not work during the week claimed. *See* Ex. 5. Those representations were false; debtor was employed, worked, and earned wages during each of the nine weeks for which he received unemployment benefits. *See* Ex. 2, p. 004 and Ex. 3.

In June of 2010, the KDOL conducted an unemployment audit and determined that it had overpaid benefits to Larson in the amount of $2,415, based upon wages reported by his employer for the same nine weeks. *See* Ex. 3. Exhibit 2 shows Larson's representations regarding hours worked and reported wages were demonstrably false. Larson had an opportunity to contest the employer's report or otherwise respond to the results of the audit within ten days. Ex. 2, p. 003. He did

---

the parties that it was not deciding at that time if this was a § 523(a)(2)(A) or § 523(a)(2)(B) claim and that it would issue a written order, reserving the right to change its oral ruling.
[8] The calendar week for which unemployment benefits are claimed runs from midnight on Sunday through 11:59 p.m. the following Saturday. *See* Ex. 7 and Ex. 8, p. 4 of 12, Weekly Claim Information. Claimants are directed to submit or file their weekly claim "after midnight Saturday of the week claimed." Ex. 7.

not do so. The KDOL's letter regarding the results of the audit cautioned that under Kansas law an individual could be disqualified for unemployment insurance benefits for one year if the individual "has knowingly made a false statement or representation, or has knowingly failed to disclose a material fact to obtain or increase benefits under this act . . ." Ex. 2, p. 003. It also advised Larson that any overpayment received "as a result of fraud, misrepresentation or willful nondisclosure of required information" would accrue interest from the date of the final determination until repaid. Ex. 2, p. 003.

On July 20, 2010, an Examiner's Determination issued finding Larson failed to report employment and/or correct earnings.[9] The Examiner found that Larson "willfully and knowingly made false representations to receive benefits not due" and determined that the KDOL overpaid benefits in the amount of $2,415 and requested payment from Larson. *See* Ex. 1. Larson was advised of his right to appeal the Determination within sixteen days, or the Determination would become final. Larson did not appeal the Determination. Though the Examiner made no specific finding that Larson's misrepresentations were made with the intent to deceive, the Examiner did find the false representations were knowingly made "to receive benefits not due." This suggests that Larson knew, at a minimum, that he was not entitled to benefits if he worked and earned wages.

The 2010 Determination was not the first time the KDOL overpaid unemployment benefits to Larson based upon his submission of a claim where he

---

[9] The Examiner was Kaneetha Crisler, the chief integrity officer for the KDOL. Ms. Crisler testified at the evidentiary hearing.

**5**

represented that he worked no hours and had no earnings. In 2009, after an unemployment audit in 2008, Larson was given notice that he improperly received benefits of $506 for two weeks in 2008 when he was employed (by the same employer as the current matter) and had earnings of $1,125 for those two weeks. As a result, he was required to repay the sum he had received. *See* Ex. 6.[10] Larson did not dispute the 2008 employer's report of wages nor the audit results. This evidence negates any potential claim of mistake or inadvertence by Larson in reporting his employment and earnings when submitting claims for unemployment benefits. It also evidences Larson's knowledge that he would be paid unemployment benefits based upon his submission of a weekly claim reporting his employment status, his hours worked, and his wages earned.

At the evidentiary hearing, the KDOL explained the standard procedure for an unemployment claimant to submit a weekly claim for benefits and the KDOL's reliance on the claimant's representations to pay unemployment benefits in a prompt manner. A claimant can submit or file a weekly claim online through the internet or through the KDOL's automated phone system. The claimant is required to set up an account and a PIN number as the claimant's electronic signature; the claimant must log in to the system by providing his social security number and PIN number when submitting a weekly claim by phone. Ex. 8, p. 3 of 12. Larson submitted his weekly claims by phone by answering the automated question prompts by keypad: 1 for "yes"

---

[10] The 2009 notice of determination was a "non-fraud overpayment," giving Larson two years to repay the overpayment without accrual of interest. Ex. 6. This overpayment is not part of the KDOL's current claim.

**6**

and 9 for "no." The KDOL system electronically records and maintains the claimant's responses to the questions. S*ee* Ex. 5.

The weekly claim form (and the automated phone system) consists of twelve questions that the claimant must answer. *See* Ex. 7 and Ex. 8, p. 5 of 12. The first question asks: "Did you work, as an employee, anytime Sunday through Saturday during the week being claimed?" *See* Ex. 8, p. 5 of 12. If the claimant answers "yes," by pushing "1" on the keypad, it then tells the claimant to "enter the number of hours worked" and "the gross wages earned" during the week claimed. If the claimant answers "no," by pushing "9" on the keypad, as in Larson's case, the number of hours and the gross wages earned are populated with zeros. *See* Ex. 5.

Larson represented nine times by pushing the number "9" on his telephone keypad (each weekly claim) that he did not work during the week for which he claimed unemployment benefits and had no earned wages. Those keypunch representations were documented in the system, and those representations were false, as indicated by his employer's response to the KDOL audit inquiry regarding those same weeks.

In his unsworn, closing remarks at the hearing, Larson admitted that he was employed during the weeks in question but indicated that whether he worked hours was dependent upon the weather. He appeared to suggest that he submitted his weekly claims for unemployment *prior* to the week for which unemployment was claimed, not knowing whether he would actually work hours. This explanation is neither credible, nor supported by the evidence. Exhibit 5 indicates, for each of the

7

nine weeks he made claims for unemployment benefits, that the claim was dated (with the time) and submitted *after* the week for which unemployment was claimed. The weekly claim form itself expressly states that the "form must be completed, signed and returned *after* midnight Saturday of the week claimed." *See* Ex. 7 (emphasis added). And the unemployment insurance benefits "Questions and Answers" brochure distributed to all initial unemployment applicants by the KDOL likewise clearly instructs that the weekly claim is to be submitted on Sunday "for the previous week." *See* Ex. 8, p. 4 of 12, Weekly Claim Information.

Only Larson and his employer knew whether he was employed and worked the week prior to his claim for unemployment benefits. Larson did not contest the employer's conflicting report to the KDOL. He did not contact the KDOL and contend that he erroneously completed the claim for the wrong week. The KDOL's chief integrity officer testified that if Larson had contacted the KDOL to correct his weekly claim, the electronic claim would have contained notes on Exhibit 5. None of the weekly claims contains notes indicating that Larson contacted the KDOL after their submission. In other words, he made no effort to correct his weekly claims.

> The claim form also contains the claimant's certification that . . .
>
> the information I have provided is complete, correct and true to the best of my knowledge and belief. I certify knowing the law provides penalties if I make false statements or withhold material information to obtain benefits in excess of the amount due me. *See* Ex. 7.

The KDOL relies on a claimant's representations in the weekly claim submissions in

paying unemployment benefits to him or her in a timely manner.[11] In this case, when the KDOL conducted an unemployment audit and verified the claimant's earnings against what the employer reported, the overpayment was discovered.

Larson does not dispute the calculation of the total overpayment of unemployment insurance benefits. The record establishes that as a result of Larson's misrepresentations on the nine weekly claims submitted to the KDOL that he did not work and therefore had no earnings, the KDOL overpaid benefits to Larson. The nine weeks of unemployment benefits that Larson received, but were not due, is in the amount of $2,415, consisting of a weekly benefit amount plus $25 of Federal Additional Compensation (FAC) each week, for a total of $225 of FAC.[12] Interest of 1.5% *per month* accrued on the overpayment from the date of the 2010 Determination. As of March 19, 2021, the amount owed is the unpaid balance of Larson's weekly benefit amount, $2,190; the FAC benefits of $225; and accrued interest of $4,171.95, for a total amount of $6,586.95. The unpaid overpayment continues to accrue monthly interest from and after March 19, 2021 until paid in full.

Conclusions of Law

The procedural posture of this case is important. It is before the Court on KDOL's motion for default judgment on its § 523(a)(2)(A) nondischargeability complaint. Bankruptcy Rule 7055 makes Fed. R. Civ. P. 55 regarding default and

---

[11] If there are no issues with the claim, unemployment benefits are sent the next working day after receipt of the weekly claim. Ex. 8, p. 6 of 12.

[12] A claimant is automatically eligible for the weekly FAC if eligible for $1 of unemployment benefits. If the claimant is not eligible for unemployment benefits, the claimant is not eligible for FAC.

9

default judgment applicable. The entry of a default judgment is committed to the sound discretion of the Court.[13] The Court may not grant default judgment on a claim that is not pled.[14]

The KDOL followed the appropriate procedure under Rule 55(a) for the clerk's entry of default. It then filed a motion for default judgment under Rule 55(b). As is its prerogative under Rule 55(b)(2)(C), the Court scheduled and conducted an evidentiary hearing to determine whether the evidence established the truth of the KDOL's allegations.[15] In doing so, the Court views the "well-pleaded allegations of fact" *and* whether those facts support a determination of nondischargeability under § 523(a)(2)(A), the only legal theory pled and advanced at the hearing by the KDOL.[16] Here, the Court finds the allegations of fact to be sufficiently pled; the question is whether those facts (deemed admitted by Larson's default) are legally sufficient to support a nondischargeability judgment by default under § 523(a)(2)(A).[17]

---

[13] *Olcott v. Del. Flood Co.,* 327 F.3d 1115, 1124 (10th Cir. 2003) (quoting *Dennis Garberg & Assocs. v. Pack-Tech Int'l Corp.,* 115 F.3d 767, 771 (10th Cir. 1997); *Tripodi v. Welch,* 810 F.3d, 761, 764 (10th Cir. 2016).
[14] *See* Fed. R. Civ. P. 54(c). In contrast, if this were not a default judgment, but the debtor had answered and contested the claim and a trial was held, the Court could grant relief on a theory supported by the evidence, even if the claim was not formally pled, if it was tried by the express or implied consent of the parties. *See* Fed. R. Civ. P. 15(b)(2).
[15] *Marcus Food Co. v. DiPanfilo,* 671 F.3d 1159, 1172 (10th Cir. 2011) (noting that Rule 55 does not require the district court to conduct an evidentiary hearing).
[16] *Olcott, supra* at 1125 (in defaulting, defendant admits the plaintiff's well-pleaded allegations of fact). *See also Tripodi v. Welch,* 810 F. 3d 761, 765 (10th Cir. 2016) (in reviewing the validity of a default judgment, it must be supported by a sufficient basis in the pleadings).
[17] *See Bixler v. Foster,* 596 F.3d 751, 762 (10th Cir. 2010) (even in default, a defendant is not prohibited from challenging the legal sufficiency of the admitted factual allegations to support the judgment); *Tripodi, supra* at 765 (The facts supporting the allegations, deemed true after default, provided a cognizable claim of securities fraud).

**10**

The KDOL has the burden of proving a § 523(a)(2)(A) fraud claim by a preponderance of the evidence.[18] Because of bankruptcy's fresh start policy, exceptions to discharge are strictly construed and doubt is resolved in debtor's favor.[19] Section 523(a)(2)(A) states, in relevant part:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—for money . . . to the extent obtained by— false pretenses, a false representation, or actual fraud, *other than a statement respecting the debtor's . . . financial condition* [Emphasis added].

*False Pretenses or False Representation*

Here, the KDOL pled that debtor fraudulently obtained unemployment insurance benefits under the first two varieties of fraud: false pretenses and/or false representations. In the context of the KDOL's claim, the elements of a misrepresentation claim under § 523(a)(2)(A) are: (1) the debtor made a false statement or representation regarding his employment, hours worked, and/or earnings for the week claimed; (2) debtor intended to deceive the KDOL; (3) the KDOL justifiably relied on the debtor's representations in paying unemployment benefits; and (4) the KDOL overpaid benefits as a result.[20]

The Supreme Court held in *Field v. Mans* that the reliance element requires justifiable reliance, a less demanding standard than reasonable reliance.[21] The former is a subjective test, not an objective one, and does not impose a duty to

---

[18] *Grogan v. Garner,* 498 U.S. 279, 286-87 (1991).
[19] *First Nat'l Bank of Omaha, v. O'Brien (In re O'Brien),* 555 B.R. 771, 779 (Bankr. D. Kan. 2016) (citing *Kansas State Bank and Trust Co. v. Vickers (In re Vickers),* 577 F.2d 683, 687 (10th Cir. 1978)).
[20] *See Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1373 (10th Cir. 1996).
[21] 516 U.S. 59, 72-75 (1995).

11

investigate the veracity of the representations, unless the falsity is patently obvious or evident from one's senses.[22] The intent to deceive element can be inferred from the totality of the circumstances or from debtor's knowingly false statement.[23]

The distinction between false pretense and misrepresentation is that for a false pretense claim, the misrepresentations are *implied,* through conduct or omissions, and intended to create and foster false impressions.[24] Intent to deceive remains an essential element of a false pretense claim. The Court now turns to the evidence of the elements of these § 523(a)(2)(A) claims.

The KDOL unemployment audit and employer's certification of debtor's employment and earnings for the nine weeks that debtor claimed unemployment benefits demonstrate that debtor's representations through the weekly claim submissions regarding hours worked and wages earned were false. The debtor's act of answering the claim questions via a phone keypad for submission of a weekly claim and by certifying the weekly claim to be true and correct via his PIN number, constitutes a false representation. The first element of a false representation is satisfied. In addition, by submitting weekly claims for unemployment, debtor impliedly represented that he was eligible to receive unemployment benefits. This satisfies the false pretense prong of § 523(a)(2)(A).

---

[22] *See In re Riebesell,* 586 F.3d 782 (10th Cir. 2009); *In re Long,* 538 B.R. 108, 122 (D. Kan. 2015) (justifiable reliance does not require creditor to prove that he acted consistent with ordinary care and prudence).
[23] *See In re Young,* 91 F.3d 1367, 1375; *In re Long,* 538 B.R. 108, 121.
[24] *Bank of Cordell v. Sturgeon (In re Sturgeon),* 496 B.R. 215, 223 (10th Cir. BAP 2013).

**12**

The intent element is also met, considering the totality of the circumstances that permit the Court to infer debtor's intent to deceive, despite the fact that debtor provided no testimony at the evidentiary hearing.[25] An intent to deceive can be inferred from a knowingly false statement. Debtor knew at the time he submitted each weekly claim whether he had worked hours for his employer and earned wages during the prior week for which unemployment benefits were sought. In fact, only debtor and his employer were in possession of that information. He "willfully and knowingly made false representations (*i.e.* hours worked and wages earned) to receive benefits not due."[26]

This was not debtor's first experience with unemployment claims and overpayments. He knew from the previous overpayment determination in 2009, that he was not eligible for full benefits if he was employed, worked hours and earned wages during the week claimed. He submitted the weekly claims anyway—nine times. Finally, if the representations were an innocent error or mistake, debtor could have contacted the KDOL to correct the same or contested the unemployment audit and his employer's report of wages earned.[27] He did neither. The Court finds that debtor's misrepresentations were made, and weekly claims were submitted

---

[25] *See State of Kansas, ex rel, Lana Gordon, Secretary of Labor v. Oliver (In re Oliver),* 554 B.R. 493, 500-01 (Bankr. D. Kan. 2016) (inferring an intent to deceive from the totality of circumstances presented by summary judgment papers).
[26] Ex. 1.
[27] *See In re Oliver,* 554 B.R. at 501 (court could infer deception was intentional where unemployment claimant knew unemployment claim contained false representations "yet failed to remedy the error.").

**13**

with the intent to deceive the KDOL into paying unemployment benefits for which he was not eligible.

The KDOL justifiably relied on the weekly claims (and representations therein) submitted by debtor in paying unemployment benefits to him. As explained in *Oliver,* the unemployment compensation system is designed to get compensation in the hands of claimants promptly and relies on weekly claims processing submitted by the claimant with self-reported employment, hours worked, and wages earned.[28] The bankruptcy court in *Oliver* also concluded that the KDOL's reliance on the claimant's weekly claim submission was justified because "a claimant is in the best position to know when, where, and for how much s/he is working in a given week."[29] The same rationale applies in this case. KDOL satisfies the justifiable reliance element of § 523(a)(2)(A).

The debtor's false representation and submission of weekly claims for unemployment caused the KDOL to pay unemployment benefits to which debtor was not entitled. As a result, it overpaid debtor unemployment benefits for nine weeks in the amount of $2,415. As provided by law, the amount of the overpayment accrues interest at the rate of 1.5% per month;[30] interest in the amount of $4,171.95 has accrued on the overpayment from the date of the 2010 Determination to March 19, 2021, and will continue to accrue such interest from March 19, 2021, until the debt is paid in full.

---

[28] *Id.* at 502.
[29] *Id.*
[30] KAN. STAT. ANN. § 44-719(d)(2) (2019 Supp.).

**14**

*Statement Regarding Debtor's Financial Condition*

That leaves the remaining requirement for a § 523(a)(2)(A) claim: the false statement may *not* be a statement respecting debtor's financial condition. This is where the KDOL's § 523(a)(2)(A) claim fails. Though the KDOL did not allege a claim under § 523(a)(2)(B), a materially false statement in writing respecting the debtor's financial condition is a separate ground for nondischargeability *and mutually exclusive of § 523(a)(2)(A)*.[31] Section 523(a)(2)(A) makes that clear by excluding false statements respecting debtor's financial condition (whether oral or written) from the reach of a general fraud-based claim under § 523(a)(2)(A).[32]

In 2018, the Supreme Court addressed the language in § 523(a)(2)(A) that excludes a statement "respecting the debtor's financial condition."[33] In *Lamar,* the Supreme Court noted that false statements respecting the debtor's [or an insider's] financial condition are governed exclusively by § 523(a)(2)(B), not § 523(a)(2)(A), and have heightened requirements (a written statement, materiality, and reasonable reliance).[34] After comparing subparts (a)(2)(A) and (B) and interpreting the phrase "statement respecting financial condition," the Supreme Court held that

---

[31] *See Associated Mortgage Corp. v. Weaver (In re Weaver),* 579 B.R. 865, 880 (Bankr. D. Colo. 2018); *Iowa Dep't of Human Servs. v. Brown (In re Brown),* Adv. No. 90-0028, 1992 WL 12626473, at *2 (Bankr. S.D. Iowa Jan. 8, 1992) (stating that § 523(a)(2) divides all statements into mutually exclusive categories; statements concerning debtor's financial condition are governed by (B) and statements *not* concerning debtor's financial condition are governed by (A)).

[32] *See In re Martinez,* 609 B.R. 351, 369 (Bankr. D. Colo. 2019) (statements respecting the debtor's financial condition can be pursued only if in writing and brought under § 523(a)(2)(B)).

[33] *Lamar, Archer & Cofrin, LLP v. Appling.* __ U.S. __, 138 S. Ct. 1752 (2018).

[34] 138 S. Ct. 1752, 1763-64.

**15**

a statement about a single asset (a tax refund in that case) can be a statement respecting the debtor's financial condition outside the purview of § 523(a)(2)(A).[35]

The Kansas bankruptcy court's opinion in *Oliver,* upon which the KDOL heavily relies, did not address *Lamar* because it was decided two years after *Oliver.*[36] One bankruptcy court that has considered *Lamar*, found it dispositive on the § 523(a)(2)(A) claim and applied it in a similar setting to that here— nondischargeability of debt for overpayment of unemployment compensation.[37] In *Martinez,* the Colorado bankruptcy court concluded that debtor's alleged false statements of income and hours worked were statements respecting debtor's financial condition, and as such, were not actionable under § 523(a)(2)(A).[38]

The *Martinez* court, in a thoroughly reasoned opinion, had no difficulty concluding that debtor's verbal responses through Colorado's interactive unemployment claim phone system that he had no income, and no hours, were "statements" within the scope of § 523(a)(2)(A).[39] The key question was whether those representations were statements "respecting the debtor's . . . financial condition."[40] It concluded that the plain and ordinary meaning of financial condition includes one's income. The court also noted that in the context of bankruptcy a

---

[35] *Id.* at 1764.
[36] *In re Oliver,* 554 B.R. 493 (Bankr. D. Kan. 2016).
[37] *See In re Martinez,* 609 B.R. 351 (Bankr. D. Colo. 2019) (concluding that debtor's unrecorded false statements through the state's automated telephone system for making unemployment compensation claims was a statement respecting his financial condition and not actionable as a § 523(a)(2)(A) claim).
[38] *Id.* at 369 (oral statements, even if false, are not actionable under § 523(a)(2)(A) if the statements are respecting the debtor's financial condition).
[39] *Id.* at 370.
[40] *Id.*

**16**

debtor's employment and income are commonly the most important aspects of a debtor's financial condition, citing several instances where the Bankruptcy Code and forms elicit a debtor's income or employment: eligibility for Chapter 13 (§ 109(e)); fee waiver for Chapter 7 (Official Form 103B); income from employment in the Statement of Financial Affairs (Official Form 107) and Schedule I (Official Form 106I); the Chapter 7 means test calculation (Official Form 122A-1); and copies of pay stubs (§ 521(a)(1)(B)(iv).[41] *Martinez* additionally pointed to a number of cases in both similar and other contexts where bankruptcy courts concluded that debtors' statements about their income are statements respecting their financial condition.[42]

Under the evidence and facts of this proceeding, the Court agrees with *Martinez* to this extent—Larson's representations that he did not work during the nine weeks claimed (and therefore had no hours and no earnings) is a "statement respecting the debtor's . . . financial condition," that renders the debt for overpayment of unemployment compensation beyond the reach of § 523(a)(2)(A).[43] Because the facts as alleged by the KDOL and found by this Court are based on statements respecting debtor's financial condition, the Court cannot grant KDOL's motion for default judgment under § 523(a)(2)(A).[44] The Court will, however, give

---

[41] *Id.* at 370-71

[42] *Id.* at 371-72 (collecting cases).

[43] *See also Iowa Dep't of Human Servs. v. Brown (In re Brown),* 1992 WL 12626473, at *2 (Bankr. S.D. Iowa Jan. 8, 1992) (application for need-based government aid for dependent children where debtor's written statements that she was unemployed and had no income were "clearly" statements respecting her financial condition and rejecting § 523(a)(2)(A) claim).

[44] Unlike this case, the debtor in *Martinez* submitted his unemployment claims orally over the phone, not by keypad entries, and there was no clear evidence of a record of the calls created and maintained by the state of debtor's responses. *See Martinez,* 609 B.R. at 361-62.

17

the KDOL an opportunity to amend its complaint, if it so desires, to assert a claim under § 523(a)(2)(B).[45]

Conclusion

The KDOL's motion for default judgment is DENIED. The Court grants KDOL leave to amend its complaint within ten (10) days of this Order to allege a § 523(a)(2)(B) claim, failing which the Court will dismiss this adversary proceeding without further notice. If the KDOL timely amends its complaint, the adversary proceeding will continue forward.

# # #

---

[45] *In re Brown,* 1992 WL 12626473, at *2 (because debtor's representation was a statement respecting her financial condition, the plaintiff could only prevail, if at all, under § 523(a)(2)(B)).